Mark Randle Mark Randle We'll move now to Appeal 25-2278, United States v. Mark Randle. We'll begin with oral argument on behalf of the appellant, Ms. Utenon. Ms. Utenon And I represent Mr. Mark Randle. Mr. Randle is appealing the district court's denial of his three pretrial motions. This morning, he will focus primarily on the district court's denial of his motion to suppress, which this court should remand and reverse, reverse and remand, excuse me, for three reasons. First, the pretextual stop of Mr. Randle was not based on a single objective criterion. Second, the stop's mission impermissibly shifted the minute officers asked about drugs without reasonable suspicion to do so. And third, the automobile exception to Fourth Amendment protections does not go as far as it has in the facts before the bench today. Under the Fourth Amendment, a traffic stop is a seizure. But more importantly, the motion to suppress here presents a simple choice that the government cannot avoid. Either the stop was a traffic stop governed by Rodriguez, in which case officers could not creep from the mission of the traffic stop and ask questions about drugs, or the stop was justified from the outset by probable cause for drugs, in which case the government must explain why it staged a traffic stop and then defended a Rodriguez detention. Turning to Mr. Randle's first point, the pretextual stop was not based on a single objective criterion. Gray stated in the motion to suppress transcript on page 18 that Mr. Randle was about a car length or less away from the car in front of him. However, Gray did not base that subjective perception on any objective fact. Ms. Judtman, we have said in our case law that an officer's credible testimony is sufficient to establish reasonable suspicion. The court credited what Officer Gray testified to. He made clear the basis that he thought he was driving too closely. Your Honor, two points in response to that. First, the fact that Mr. Randle agreed that he was momentarily perhaps following the car in front of him too closely happened after the fact. It happened after the stop, and so that is not a fact that the officer knew when he was going to stop Mr. Randle that Mr. Randle would agree that he... But why can't the court consider that admission after the fact when assessing the reasonable suspicion up front? Your Honor, because the court looks to the factors that the officer knew at the time he decided to make the stop. But the officer isn't making the reasonable suspicion based on your client's admission.  The court is assessing the reasonableness in light of the totality, and that's a piece... It's like an admission. If he had said, you are right, I was following too closely, is it your argument that the court could consider that? Your Honor, if Mr. Randle had completely agreed that he was following too closely, then that would be a concession. However, Mr. Randle points the bench to the Illinois statute for following too closely that he was pulled over for, says that a person should have a following distance that is reasonable and prudent. Are those two words, reasonable and prudent, is that where you're training your argument, isolating the argument to say that's a subjectivity that should not have applied? I understand the contrast with the stopwatch and the two-second rule seem to have more of an objective character to them. Is your problem with those Illinois words, reasonable and prudent? Your Honor, we do not have a problem with the words reasonable and prudent, because here it was reasonable for Mr. Randle to be briefly following a car in front of him too closely after Gray had exited from the median to get onto the roadway. And it seems from Video 1 that from the time Gray got onto the road, he was pursuing Mr. Randle. We know from the motion to suppress transcript that Gray had been told that he needed to stop Mr. Randle. He was told that before he ever saw Mr. Randle's car. But that's not unusual. That's very standard police practice when they want to pull somebody over. If they have reasonable suspicion, they believe there might be drugs in the car. That's a ruse that is perfectly acceptable under the law. Well, Your Honor, that gets at the two lanes that exist here. Either this was a traffic stop, in which case Rodriguez governs, and officers had to stay within the mission of the traffic stop, or this was a stop that there was already probable cause or even reasonable suspicion, probable cause for drugs, in which case that's a different doctrinal line. The government has to choose which line it wants to be in, and it has chosen to be in the lane of Rodriguez because they chose to do a traffic stop. And thereby we turn to Mr. Randle's second point, which is that the stop's mission impermissibly shifted the minute officers asked about drugs without reasonable suspicion established to do so. Under Rodriguez, the mission of a traffic stop is traffic safety tasks, and as this court held in Cole, also can be travel questions. But questions about drugs are detours from the mission of a traffic stop. Under our opinion in Cole, why can't those drug questions be asked as long as the stop is not extended because of them? Your Honor, it's because under Rodriguez there is mission time, and that is not one term, but it is two terms, Your Honor, mission and time. So you're saying we got it wrong in Cole? Your Honor, Cole was correctly decided under those facts because there Mr. Cole was held for time after the traffic stop, but that was deemed reasonable by this court. But this is different because the traffic stop is ongoing. But, Your Honors, where there has been a pretextual stop, it cannot be the case that officers can make that pretextual stop for a traffic violation and then use their pretextual notions of what the motorist that they've stopped is up to. So you aren't arguing that the drug questions unreasonably prolonged the stop, is that correct? Well, Your Honor, under Rodriguez, any questions that go away from the mission of the stop are a detour, even if slight. But we have said that questions are okay as long as they don't unreasonably prolong the traffic stop. So my specific question to you is, are you arguing that the drug questions that were asked unreasonably extended or prolonged the traffic stop? Your Honor, it is not that they unreasonably prolonged the stop. Mr. Randall believes that this stop occurred within the reasonable amount of time to write a written warning. However, Mr. Randall's argument falls on and turns on the mission, and it is the fact that officers detoured from the mission without new reasonable suspicion. And, Your Honor, in Cole, this court said it is only when an officer's follow-up questions go too far and become unreasonable that a stop risks becoming prolonged. Given what occurred at the hotel, that the officers know there was a drug exchange with a confidential source that your client was involved in, even if your reading of the law is correct about the mission, why wouldn't they have reasonable suspicion to ask about that, given that he was just involved in a drug transaction with a confidential source? Your Honor, because that goes to the two different lanes. If that's the case and the government has reasonable suspicion or probable cause that Mr. Randall is involved in a drug operation, then they have that probable cause and they can get a warrant instead of shoehorning this into the automobile exception for the Fourth Amendment. And, in fact, Your Honors, the government did get a warrant. They got a warrant for a GPS tracker to put it on Mr. Randall's car, but they chose not to get a search warrant when they could have done so. And by doing this, the government, like I said, shoehorns this into an automobile exception where there was no real exigency in the first place. Mr. Randall stayed at the Hyatt in Chicago overnight. There was more than enough time to get a warrant for a search as well as the warrant that they already got for the GPS tracker. Do we require exigency to apply the automobile exception? Your Honor, yes, because the automobile exception is within the exigent circumstances umbrella of Fourth Amendment exceptions. So, therefore, under the automobile exception, it is an exigency in and of itself because of the mobile nature of automobiles. So, therefore, this falls within an exigency, the government tries to argue, simply because Mr. Randall is in his car headed south. But that is not the case. In turning briefly back to Mr. Randall's second point, I'd like to point out that the government concedes on page 40 of its brief that if Gray's actions veered outside the mission of the traffic stop, then, quote, of course, the brevity of the stop would not matter. So it seems that the government isn't arguing that the stop was or was not prolonged, but rather is arguing with us about mission. And it is clear that Gray and Adams detoured from the mission of the stop, which was for following too closely, in order to ask about drugs when there was no reasonable suspicion. The only factor that officers point to to establish reasonable suspicion is mere nervousness. And this court has never held that mere nervousness is enough. In fact, to the contrary, in Huff, this court held that nervousness alone cannot supply reasonable suspicion. This court has never held mere nervousness is enough, and it should not hold so today. Is there any basis to conclude that Trooper Ebbing perjured himself at the suppression hearing? Your Honor, that is what we get to. A bit of that goes to the motion to produce the grand jury transcript, which Mr. Randall is asking for in order to see if Officer Ebbing did, in fact, perjure himself. And the standard there is Douglas Oil, which requires a particularized need that outweighs the secrecy. And then the request made by Mr. Randall must be structured and limited, not a fishing expedition. What is the particularized need? The particularized need here is to see if Officer Ebbing did, in fact, perjure himself either in this particular motion at the grand jury hearing, but also if he perjured himself at the motion to suppress hearing to see if his stories line up. That is why Mr. Randall has asked for the grand jury transcript. Turning to the second motion here, the motion to disclose the confidential source. Before you go to that, let me ask you about the dog sniff, which you challenged. You conceded that the traffic stop did not extend the time that it should have taken. Correct, Your Honor. What is your argument with respect to the dog sniff? Well, a dog sniff is not part of a routine traffic stop. And here it's very clear Officer Ushman, who was the canine officer, said in the transcript on page 35, line 8, that he was staged for this stop, which all gets back to the fact that the government has to explain why, if they had probable cause and if they were able to get warrants and do all of these things, they staged a traffic stop. But why do they have to explain that? The Supreme Court has made clear that a dog sniff isn't even a search, so it's not subject to the Fourth Amendment. And as long as the dog's sniff didn't extend the traffic stop, which you have conceded it didn't, under the clear case law, I don't understand what the violation would be. It might not have been the case, Your Honor, that it extended the time of the traffic stop, but it did exceed the mission of the traffic stop. Whenever someone's pulled over for falling too closely or going a little too fast, they don't automatically get out a dog to go sniff around their car. A dog sniff is not part of a routine. Are you relying on any case law for that? Because our case law and the Supreme Court have been pretty clear that as long as you're not extending the traffic stop, a dog sniff is not a search, and a dog can sniff the car, the truck, any kind of vehicle. Yes, Your Honor, Mr. Randall concedes that a dog sniff can happen and is not a search. However, here he points to the fact that this was all staged, and the government must pick a lane. Either this was a routine traffic stop in which Rodriguez governs, or there was already probable cause for all of this, in which case the government must explain why it went through all of these hoops to do what it has done. I see that I'm into my rebuttal time. I would like to reserve my remaining time for rebuttal. Very good. Thank you, Ms. Juntton. Mr. Keenstra, we'll move to you now for argument on behalf of the appellee. May it please the Court. Good morning, Your Honors. Jeff Keenstra on behalf of the United States. Beginning with the motion to suppress, there are two very straightforward alternative grounds for resolving this motion. The first is the existence of probable cause for drug trafficking, and the second is the existence of reasonable suspicion for a traffic stop followed by the canine alert during the course of that stop. Now, beginning with probable cause, the district court found, and the defendant does not dispute on appeal, that the officers had probable cause for drug trafficking, that the vehicle essentially was on its way back from a drug deal in the Chicago area, the fruits of that offense were likely to be found in the car. Is your argument that they had probable cause to arrest him for drug trafficking, or they had probable cause to believe that evidence of drug trafficking would be found in the car? The immediate argument is the latter, the probable cause, because that would equally justify everything that happened here. I think they did have probable cause to arrest, but what justifies this stop and search of the car here is simply probable cause to believe that there was evidence of a crime to be found in the car. The defendant does not challenge that finding on appeal, and so the only question in that regard is, is the automobile exception applicable here? And a very longstanding Supreme Court precedent establishes that between the reduced expectations of privacy in a vehicle and a vehicle's inherent mobility, probable cause is always sufficient to stop and search a vehicle. A warrant is never required. As defense counsel noted, the vehicle itself is an exigency. There doesn't have to be any further exigency beyond that. And so when you have the concession of probable cause here, or a failure to dispute probable cause, that itself justifies the stop and the search as well. Defense counsel's argument that the government has to choose one or the other is mistaken. The fact that this stop is justified two times over instead of one doesn't make it any less justified. In fact, it's very common for the government to have multiple independent grounds for a search and seizure, to have probable cause, to have a traffic stop on top of that. That happened here. It's very common, and there's no law that says that having multiple grounds for the stop makes it any less justifiable. How do you respond to Ms. Jutnan's argument that the drug questions that were asked of Mr. Randall are outside the mission under Rodriguez, regardless of whether or not it extended the time of the traffic stop? So to that last point, our first response to that is that it did not extend, and the district court made that factual finding on page 6. Yeah, regardless of that.  In other words, she's arguing you can't ask drug questions because those questions are outside the mission. Right. And I respectfully disagree with that view. There are two critical missions at every traffic stop, and that is both processing the traffic violation itself and officer safety, ensuring that the officer survives the encounter. Safety is an integral part at every single moment of every traffic stop, and so for the same reasons that officers can do things like remove a person from their car and have them sit in the squad car and run a person's criminal history during a check, it's reasonable under circumstances like these one we have here for the officers to make the sorts of minimal inquiries that occurred about whether there was any contraband in the car, and that's so because of the defendant's extreme and increasing nervousness throughout the encounter. So based on the facts facing the officers, whatever was in that car was creating a really profound reaction in the defendant. The officers had an interest in trying to figure out what that was because that would pose a risk to their safety, and that's exactly what occurred here. Once the defendant realized that the contents of his car were going to be discovered, he tried to escape, and then he fought with officers and actually inflicted injury on one of the officers, which I think really reinforces why this is an integral part of the safety mission of the stop. The contents of that car actually did pose a risk and cause physical harm to the officers based on the defendant's reaction, and so it was perfectly reasonable to make the sorts of limited inquiries that they did. Are there drugs in the car? On top of that, I'd note that the defendant's concern with the questions that were asked about drugs, those questions were asked by a different officer. Trooper Gray was the one sitting in the driver's seat, typing on the computer, processing the- Why does that matter? That just reinforces the district court's conclusion that it didn't create any delay. So one officer was actually working on the warning throughout the stop, as the district court found on page 6 of its order. The other officer was asking questions, but because it was a different officer, that's just further corroboration. Those questions did not delay Trooper Gray in his actions in processing the warning. Concerning the existence of reasonable suspicion for the traffic stop, I think this court's questions got to the heart of the issue, that the officer's firsthand observation of following distance on the highway is itself sufficient to create at least reasonable suspicion. The statute here doesn't require any particular metric. It's a broad, qualitative standard that asks simply whether the driver is driving closer than is reasonable and prudent under the circumstances. In Cole, this court found that there was reasonable suspicion for that violation when the officer personally observed from about 100 yards away that the defendant was about two car lengths behind the car ahead of him. Here, the trooper testified, and the court found that it was consistent with the record, that the defendant was within one car length of the car ahead of him. That creates reasonable suspicion for the offense of following too closely. The defendant suggests that this was just very brief, and I think the record shows otherwise. In fact, the dash camera video shows that the officer was directly behind the defendant for about a minute and a half. So this wasn't brief. This wasn't just caused by the officer's presence. And to the extent the defendant suggests that the officer's presence caused the cars ahead of him to slow down, that still doesn't mean that the officer caused him to continue tailgating the car ahead of him, driving within a car length at highway speeds for about a minute, minute and a half that the officer followed him. Mr. Greenstrow, what would be the particularized need that would justify releasing a portion of a grand jury transcript? In the posture that the defendant made the request, it would have to be a ground for dismissal of the indictment. To the extent the defendant wants it related to the suppression hearing or for trial, it was a year and a half too late regarding suppression and too early concerning trial. Under Rule 12H and Rule 26.2, those rules apply to requests made at a suppression hearing. Here, the defendant first moved for disclosure over a year and a half after the suppression hearing had been held. By then, the district court had already had supplemental briefing, had issued its order, and even denied a motion for reconsideration over a year before the defendant finally moved for the grand jury testimony. Of course, at trial, the defendant would have an absolute right to that testimony if the officer testified, but there's no requirement for disclosure before trial. So at the time the defendant made his request, the defendant would have had to identify a basis for dismissal of the indictment, and he simply has never articulated such a basis. He speculates about whether the officer testified that the source had been involved in some unrelated criminal conduct, and that's just really neither here nor there when it comes to a basis for dismissal. Did the court review the transcript ex parte? No, not to my knowledge, and in fact, I don't believe it was produced to the court. So basically, the defendant would have needed a basis for dismissing the indictment. The defendant has suggested that they wanted to review the adequacy of the materials on which the indictment was based, and that's simply not a defendant's prerogative. The existence of probable cause is entrusted exclusively to a grand jury. It's not reviewable by a court or by a defendant, and the defendant has not identified any misconducts before the grand jury as would be necessary to obtain dismissal. Briefly then, regarding the confidential source, the district court was well within its discretion to find that the defendant hadn't met his burden to show a genuine need for disclosure of the source that outweighed the public interest in both the free flow of information from sources as well as protecting sources' safety and security. This is a defendant's burden, and this court has been very clear that a defendant can't meet that with unsupported assertions or conclusory allegations. Viace, I think, is a very similar concern or case where the defendant there said in a drug trafficking case that the source might be helpful to a defensive entrapment, and this court said that that was unfounded because the defendant offered not a shred of evidence to support that assertion and that the privilege will not yield to mere speculation that the source may possibly prove helpful. I think that's very much what we have here. The district court found that the defendant offered nothing more than bare, unsupported assertions, and that's correct based on the defendant's filings. And McDowell was another helpful case because the defendant actually there did much more, and that still wasn't sufficient. That was another drug trafficking case, and the source actually did have a transactional role. And on top of that, the defendant not only identified a defense, but he offered a factual basis for that defense, and he identified what he thought the source would testify to in support of that defense, and still that failed because even accepting those facts, the defense would not have been viable. And here we just don't have any of that. The defendant threw out in the district court some labels of defenses that might apply, entrapment and so on, but he offered no factual basis that might support those. He offered no reason to believe that the source would have something to say that would be both relevant and helpful instead of detrimental to any defense. I think the defendant's primary argument is simply that he can't be expected to make that showing without first speaking to the source, and that argument is incorrect both legally and factually. Legally, it's the defendant's burden. The privilege applies on its own force in every case, and the defendant bears the burden to overcome it, and as this court has made clear, that can't be met with mere speculation or without some factual basis, an articulable basis to believe that the source would have something helpful to add to the defense. And factually, it's simply incorrect that the defendant had no means available to him to make a showing if it could have been made. Not only did the defendant, by his own admission, have access to extensive discovery materials concerning the source, but he also had firsthand knowledge of his own involvement in this case. Concerning the discovery materials, that included not only police reports about the source's activities, but also the recorded phone calls and the text messages between the source and the defendant arranging the encounter here. So if there were anything in those materials to support a defense of entrapment, for example, or to suggest that the source had anything helpful to add, the defendant was well-positioned to make that showing, and on top of that, he had an opportunity at the suppression hearing to examine the officer as well, and still the defendant didn't suggest that there was anything helpful that the source would have to add. And second is that these are all matters that would be within the defendant's personal knowledge. He would know whether and how he came into knowing possession of the three pounds of methamphetamine in his suitcase and his trunk. He would know if anyone induced him to possess those drugs and if he lacked the predisposition to do so. So between the defendant's own personal knowledge, the discovery materials, if there were a showing to be made that this source would be both relevant and helpful, the defendant was well-positioned to make that showing, and his failure to do so I think is telling. Even after the district court denied the motion on that ground for lack of factual support, the defendant never attempted to remedy those shortcomings, and the reason is simply that there is no basis in this case to satisfy that showing. Unless Your Honors have any further questions, the government would ask this court to affirm. Thank you, Mr. Kinstra. Thank you. Ms. Junton, we'll go back to you with two minutes for rebuttal, please. Thank you. May I proceed?  Thank you, Your Honor. One brief point on rebuttal. Because this was a traffic stop and that is the lane the government chose to handle Mr. Randall's situation with, Rodriguez applies, which means that the questioning of officers cannot go beyond the mission for the stop. The Supreme Court has held as much in Cabales that a stop must be tied to the traffic mission and constrained in scope. Part of the scope of a stop is the questioning that officers ensue and ask during that stop. Also, Mr. Randall will point to the dissent in this court's opinion in Cole. There the dissent lays out that an infraction mission sets limits on pretext. And on page 438 says, quote, the question for the officer is whether he can see, hear, or smell anything that provides reasonable suspicion for expanding the scope of the pretextual traffic stop. End quote. Your Honors, where we live in a world where pretextual stops are currently allowed under Wren, there must be some sort of tethering of the questions that officers are permitted to ask during the stop to the mission for the stop. And that is what this court has the ability to hold and rule today. If Your Honors have no further questions, then Mr. Randall asks this court to reverse the district court's denial on his three pretrial motions. Thank you, Your Honors. Thank you, Ms. Jensen. Thank you, Mr. Judge. Thank you, Mr. Kinstra. The case will be taken under advisement.